FILED
03 JUL 15 PM 3:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES A. SMAW, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | 02-AR-1819-S |
| EBSCO INDUSTRIES, INC, | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED
JUL 15 2003

**MEMORANDUM OPINION**

Before the court is a motion for summary judgment by defendants, EBSCO Industries, Inc. and EBSCO Media (collectively "EBSCO"). Plaintiff, Charles Smaw ("Smaw"), a black male, contends he was terminated because of his race, subjected to a hostile work environment on the basis of race, and terminated in retaliation for filing an EEOC charge. Smaw also contends that EBSCO retaliated against him by making false statements in opposition to his unemployment compensation claim. He asserts these claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

**Statement of Undisputed Facts**

Smaw worked for EBSCO on and off starting in 1993 and was deemed a "stellar employee." In March 2003, Smaw was hired for the third time as a folder operator. Greg Hacker ("Hacker"), the Bindery Manager, was Smaw's direct supervisor. Hacker reports to Dave Love ("Love") , Assistant Production Manager, and then Margie Sims ("Sims"), Production Manager, and then Lanny Sevier ("Sevier"), General Manager of EBSCO Media. Debbie Martin is the



38

Human Resource Manager at EBSCO Media. All of these persons are white. Smaw's third tenure at EBSCO was terminated after he appeared to be the instigator of a physical altercation with another black employee at work.

On February 19, 2002, Smaw entered the baler room and Lincoln Hall ("Hall") was in the room emptying a buggy. Smaw, who says he is married, was "dating" Hall's sister-in-law, and this troubled Hall. When Smaw encountered Hall in the baler room that day, the two men exchanged words. Hall told Smaw, "Man you crazy." Smaw responded, "stay out of my business." Hall approached Smaw, put his hand in his face, and touching his nose, stated "I'm not scared of you." Smaw then took Hall's hand and pulled it down and the two locked hands holding each others arms while continuing to argue. Hall then cursed at Smaw stating, "I'll fuck you up; I'll kill you," and similar language. Smaw replied, "Don't do this." Smaw does not characterize this scuffle as a "fight" because he believes that if it had been a fight, he "would have really hurt him." Hall also does not characterize the incident as a fight. Rrather Hall says he "was assaulted; I was jumped on." In fact, after the incident, Hall reported to the police department that he had been assaulted by a co-worker. William Mosley ("Mosley") broke apart Smaw and Hall. When Mosley intervened, Smaw had Hall "locked up against the wall" and had "his hand around his throat." After Mosley broke up the fight, Hall told Smaw that he would make him lose his job. Later, Hall approached Smaw and said, "I'm going to kill you, you need to watch your back." However, Hall testified that Smaw is twice his size and he was scared of him.

Hall immediately reported the incident to his supervisor, Edward Crawford ("Crawford"), and Smaw, Hacker, Hall, and Love convened in Crawford's office to discuss the incident. Hall's

neck was bleeding from what appeared to be a fingernail scratch. Hall also had marks on his hands. Hall and Smaw each told his side of the story. Hall claimed that Smaw jumped him first. Smaw insisted that Hall got in his face. Hacker retrieved Mosley from the baler room, but at that time Mosley claimed ignorance. Love concluded that because he could not determine at that time who started the altercation both employees should be suspended for three days without pay.

When Hall returned from his three-day suspension, he followed up with Martin and Sims about the incident. Hall expressed concern to them about his safety and provided copies of his police and medical records. At that point, Sims and Martin interviewed Mosley again. Mosley again told them he did not know who started the fight. However, Mosley admitted that Smaw had Hall by the neck and he had to pull Smaw off of Hall to separate them. Mosley also said that Smaw had no business reason being in the baler room at that time. Sims updated Sevier with the new information about the incident. Sims now believed that Smaw provoked and instigated the altercation and that Hall was "only protecting himself." Smaw did not know that Mosley was interviewed again until after he was terminated. After the suspension, but at the end of his first day back, Smaw was terminated by Love and Martin. Smaw's termination sheet provided, "[a]fter further investigation it has been determined that you had no reason to be in the baler room away from your work station and you were pulled off of Lincoln by another co-worker . . . the decision has been made by management to terminate your employment with EBSCO Media effective today." Hacker did not write up Smaw for being out of his work area because it did not violate company policy. Normally, at the end of the shift, Smaw cleans up his work area, takes the buggy he has put his scrap paper in to the bailing room, and ascertains an empty buggy for his work area.

Smaw alleges that a hostile work environment existed at EBSCO because he heard one employee make reference to the word "nigger" and because he was referred to as "boy" two times. Smaw understood that referring to a black man as "boy" was a racial connotation. The phrase was accompanied by an aggressive and confrontational tone of voice. Smaw heard the word "nigger" when David Cupps ("Cupps"), an hourly employee, explained that he would not call a person a "nigger." Cupps was warned and eventually terminated for racial slurs. Smaw also claims that both Hacker and Mike Mooney("Mooney"), the third shift supervisor, in separate conversations, used the word "boy" in a racial manner towards him. On April 19, 2001, when Smaw asked Hacker for white medical tape, Hacker responded "You're out of luck, boy, we have no more white tape." Smaw became agitated and accused Hacker of being racist. Smaw took the matter to Human Resources where Hacker apologized for inadvertently causing offense and explained to Smaw that he never intended the comment to be race-related. Smaw knows of no other occasions when Hacker used the word "boy."

Eight months later when Smaw arrived at work, another operator was already running Smaw's usual folder machine so Mooney reassigned Smaw to another job. Although Smaw informed Mooney that he planned to return to his usual folder after the operator left, Mooney explained that Smaw needed to finish running the job he already was performing because it was due that day. A disagreement ensured and Mooney referred to Smaw as a "big boy." Smaw accused Mooney of being racist. Mooney explained that race was not the issue and apologized for the comment. Smaw also apologized and told Mooney "I thought about it, I'm sorry the whole thing ever happened. It was a big misunderstanding." Because Smaw told a supervisor he was not going to perform the job he was assigned he was issued a warning for insubordination.

Smaw's alleged complaints of discrimination occurred on April 9, 2001 and December 6, 2001. After Smaw's complaints of racism, people stopped talking to him. Smaw believes that his discharge on March 4, 2002, was retaliation for his earlier complaints. Smaw also maintains that EBSCO made false statements to frustrate his claim for unemployment benefits at the appeals hearing. Smaw alleges in his complaint that "defendants have slandered plaintiff by forced publication," although it never mentions a basis in state law or pendent jurisdiction. The statement he claims was false is that he was terminated for fighting. Smaw does not believe the February 19 altercation was properly characterized as a fight. Smaw believes that EBSCO used the word "fight" in retaliation for his "complaints of racism at the company as well as my filing of the charge of discrimination and retaliation."

**Analysis**

EBSCO argues persuasively that Smaw's claim that it subjected him to a hostile work environment is contradicted by the undisputed evidence. In order to succeed on a hostile work environment claim Smaw must show that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based upon race; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Henson v. City of Dundee,* 682 F.2d 897, 903-04 (11th Cir. 1982). To establish a prima facie case, Smaw must demonstrate that the incidents of harassment were "so 'severe or pervasive' as to 'alter the conditions of his employment and create an abuse working environment . . .'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998). The "'mere utterance of an . . . epithet which engenders offensive feelings of an employee' . . . does not sufficiently affect the conditions of employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(quoting *Meritor*

*Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Only when a workplace is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe to alter the conditions of the employment and create an abusive working environment'" is the law violated. *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 65-66). "In deciding whether a hostile environment was created, factors to consider include the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's performance at work." *Underwood v. Northport Health Services Inc.*, 57 F. Supp 2d. 1289, 1302-03 (M.D. Al. 1999). "The racial slurs allegedly spoken by co-workers [have] to be 'so commonplace, overt, and denigrating that they create an atmosphere charged with racial hostility." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995).

Smaw claims that a hostile work environment existed at EBSCO because he heard one employee make reference to the word "nigger" and because he was referred to as "boy" on two occasions. Smaw understood that referring to a black man as "boy" was a racial slur, especially when accompanied by an aggressive and confrontational tone of voice. Smaw heard the word "nigger" when David Cupps ("Cupps"), an hourly employee, explained that he would not call a person a "nigger." Cupps was warned and eventually terminated for racial slurs. Smaw also claims that both Hacker and Mike Mooney("Mooney"), the third shift supervisor, in separate conversations, used the word "boy" in a racial manner towards him. On April 19, 2001, when Smaw asked Hacker for white medical tape, Hacker responded "You're out of luck, boy, we have no more white tape." Smaw became agitated and accused Hacker of being racist. Smaw took the matter to Human Resources where Hacker apologized for inadvertently causing offense

and explained to Smaw that he never intended the comment to be race-related. Smaw knows of no other occasions when Hacker used the word "boy."

Eight months later when Smaw arrived at work, another operator was already running Smaw's usual folder machine so Mooney reassigned Smaw to another job. Although Smaw informed Mooney that he planned to return to his usual folder once the operator left, Mooney explained that Smaw needed to finish running the job he already was performing because it was due that day. A disagreement ensured and Mooney referred to Smaw as a "big boy." Smaw accused Mooney of being racist. Mooney explained that race was not the issue and apologized for the comment. Smaw also apologized and told Mooney "I thought about it, I'm sorry the whole thing ever happened. It was a big misunderstanding." Defendants contend that because Smaw told a supervisor he was not going to perform the job he was assigned he was issued a warning for insubordination. Smaw argues that even though he was complaining of racism, Martin did not accept his complaint and instead charges Smaw with insubordination.

Although Smaw claims that he was called a "boy" by Hacker and Mooney, the word "boy" is not direct evidence of race discrimination. "Boy" is race-neutral and "devoid of any meaningful context." *Standard v. A.B.E.L., Inc.,* 161 F.3d 1318, 1329 (11th Cir. 1998). Evidence that is subject to more than one interpretation cannot constitute direct evidence. *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1083 n.2 (11th Cir. 1996). Smaw's only other evidence of a hostile work environment is that he heard the "N" word used only once by an hourly employee, but Smaw admits the word was not directed at him and only used as a reference. Moreover, even if "boy" is considered a racial epithet, these sole occasions are sporadic at best and do not create an "atmosphere charged with [race-based] hostility." Over a two year period, Smaw has offered

only three instances to support an alleged hostile environment. Smaw has failed to show that the environment was both subjectively and objectively racially hostile. EBSCO correctly points out that rather than officer evidence that the alleged harassment was race-based, Smaw focuses on ad hominem attacks upon EBSCO's witnesses and urges the court to make credibility findings that are inappropriate on summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 158 (2000). Smaw spends three pages of his brief analyzing why Martin did not consider Smaw to have made a "formal" complaint of discrimination. The fact that Smaw made a complaint demonstrates that he subjectively believed the "boy" references were inappropriate, but Smaw has failed to demonstrate that any alleged harassment was so severe as to affect a term or condition of employment. Because Smaw has failed to put forth a prima facie case of hostile work environment, defendants motion for summary judgment as to the hostile environment claim is due to be granted.

EBSCO maintains that Smaw's termination claim fails because he cannot show that similarly situated white employees were treated more favorably and regardless, Smaw cannot show that EBSCO is lying about the reason for his termination. To establish a prima facie case of race discrimination in termination, plaintiff must show that: (1) he belongs to a protected minority, (2) he experienced an adverse job action, (3) he was treated less favorably than similarly situated persons outside of the protected minority, and (4) he was qualified for the position. *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1310 (11th Cir. 1998) *opinion modified by* 151 F.3d 1321 (11th Cir. 1998). If Smaw established a prima facie case, defendants must then articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.

Smaw fails to point to any similarly situated white employees who were guilty of the same misconduct yet escaped termination. Smaw points to Dave Love as a comparator. Love is a white male and a manager. Smaw claims that Love admitted to fighting in the workplace but was promoted, not discharged. Love and Smaw are not similarly situated. Love got into an "altercation" when he had to escort a an ex-employee off the premises for trespassing. When he asked the ex-employee to leave Love said he did not know what the ex-employee was going to do so he "leveled him." There is no evidence that management even knew about this incident at the time. Getting in an altercation escorting a trespassing ex-employee of the premises is not the same as getting into a fight with a coworker. Smaw must show that he is "similarly situated in *all relevant aspects* to the non-minority employee" who was treated more favorably. *Silvera v. Orange County School Bd.,* 244 F.3d 1253 (11th Cir. 2001). For example, in the disciplinary context, "the comparator's misconduct must be *nearly identical* to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" Id. (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (emphasis added). "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). For Love to be similarly situated, Smaw would have to establish that management knew of the alleged wrongdoing of Love as it knew of Smaw's altercation, yet consciously overlooked it. *See Jones v. Gerwens,* 847 F.2d 1534, 1541-1542 (11th Cir. 1989). Smaw's termination claim fails because he cannot show that similarly situated white employees were treated more favorably.

Assuming *arguendo* that Smaw can establish a prima facie case, EBSCO is still entitled

to summary judgment because Smaw did not rebut EBSCO's legitimate nondiscriminatory reasons for his termination. Smaw attempts to rebut EBSCO's legitimate, nondiscriminatory business reason by arguing that there are questions of fact whether Smaw was terminated for being out of his workplace or for fighting. Smaw claims he was not out of his workplace by being in the bailing room and no one has ever been written up for such, much less fired. Smaw's termination sheet provided, "[a]fter further investigation it has been determined that you had no reason to be in the baler room away from your work station and you were pulled off of Lincoln by another co-worker . . . the decision has been made by management to terminate your employment with EBSCO Media effective today." Being out of his work station was never the sole violation for which he was terminated.

Smaw also attempts to rebut defendants' legitimate nondiscriminatory reasons for termination by discrediting Hall's testimony. Whether or not Hall lied about the fight to the defendants is immaterial. Whether or not Hall was the actual instigator is immaterial. Even if Smaw "did not in fact commit the violation with which he is charged," EBSCO successfully rebuts any prima facie case of disparate treatment by showing that it believed that Smaw committed the violation. *See Jones* v. *Gerwen,* 874. F.2d 1534, 1540 (11th Cir. 1989). EBSCO's belief that Smaw was the instigator was reasonable. The undisputed evidence indicates that Hall told EBSCO he was concerned about his safety and provided copies of his police and medical records. Mosley also stated that although he did not know who started the fight that he saw Smaw had Hall by the neck and he had to pull Smaw off of Hall. Federal courts do not sit to second-guess the business judgment of employers. A plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's

reason, at least not where, as here, the reason is one that might motivate a reasonable employer. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997). Smaw also complains about the fact that he was not interviewed again prior to his termination. Smaw was interviewed immediately after the altercation occurred. Based on the initial interviews, both employees were suspended. Defendants did not surreptitiously interview other participants behind Smaw's back. Hall came to EBSCO with documentation showing the severity of the altercation. EBSOC was under no obligation to give Smaw another chance for rebuttal; it understood that Smaw denied any wrongdoing. EBSCO is entitled to summary judgment on Smaw's race discrimination claim.

Smaw asserts two retaliation claims: (1) that he was terminated because he complained of discrimination, and (2) that EBSCO opposed his unemployment benefits and called the altercation a "fight" because he complained of discrimination and filed an EEOC charge.[1] To establish a prima facie case of retaliation, Smaw must show that (1) he engaged in a statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse employment action was causally related to the plaintiff's protected activities. *See Little v. United Technologies, Carrier Transicold Div.,* 103 F.3d 956 (11th Cir. 1997). The burden then shifts to the defendants to produce a legitimate, non-retaliatory reason for the adverse employment decision and then back to Smaw who must ultimately prove that the proffered reasons are pretext for retaliation. *E.E.O.C. v. Reichhold Chemicals,* 988 F.2d 1564, 1572 (11th Cir. 1993).

EBSCO argues that Smaw cannot meet his burden of establishing a prima facie case for the following reasons: (1) Smaw's complaint that "boy" was used in his presence is not protected

[1] Smaw abandons his retaliation claim with respect to opposition of his unemployment benefits, asserting only that his termination was retaliatory. Because Smaw failed to address EBSCO's arguments on this matter, EBSCO is entitled to summary judgment on this claim.

activity; and (2) regardless, Smaw cannot show a causal connection between his termination and any protected conduct.

Defendants first argument is that complaining of the use of the word "boy" is not protected conduct. The standard for protected activity involves both a subjective and objective component. "A plaintiff must not only show that he subjectively believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It is thus not enough for a plaintiff to allege that his belief in this regard was honest and bona fide, the allegation and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Little v. United Technologies Carriers, Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). Smaw has always understood that referring to a black man as a "boy" was a racial connotation. It is objective and subjectively reasonably for a black man to believe complaining about the use of the word "boy" by white supervisors is a protected conduct and unlawful discrimination. It was protected conduct in the context of this case.

EBSCO next contends that Smaw cannot establish a prima facie case of retaliation because he cannot demonstrate that the "protected activity and the adverse action were not wholly unrelated." *Clover v. Total System Servs.*, 176 F.3d 1346, 1354 (11th Cir. 1999). A plaintiff satisfies this requirement if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between his awareness and the adverse employment action. *Id.* at 1354. Defendants maintain that Smaw cannot show that his termination on March 4, 2002 was causally connected to his April 9, 2001 and December 6, 2001 "boy" complaints. Defendants contend that Sevier made the decision to

terminate Smaw based upon oral reports from Sims about the altercation and meetings with Hall and Mosley. Sims never told Sevier that Smaw complained about race discrimination and Sevier never saw documentation regarding Smaw's complaints. In fact, it was not until after the filing of this lawsuit that Sevier first learned Smaw made complaints of race discrimination.

Smaw complains that after he complained of racism, "everyone that he had talked to stooped talking to him. 'I mean, they didn't know me anymore or something. They didn't speak to me.'" Although this may be true, it was not an adverse employment action. Smaw also contends that Martin and Sims were both involved in the investigation of the Smaw-Hall fight, were both aware of Smaw's complaints of racism and that both terminated him. Smaw did not produce any evidence that Sevier knew of his alleged protected activity before he decided to terminate him. Smaw ignores the issue of Sevier's knowledge and asserts that Sims and Martin made the decision to terminated Smaw. There is no dispute that Sevier made the decision to terminate Smaw. Furthermore, it was not until after the filing of the lawsuit that Sevier first learned of Smaw's complaints of racism. Without evidence that Sevier knew of Smaw's alleged protected conduct, Smaw cannot establish a causal connection and his retaliation claim fails.

Furthermore, as EBSCO points out, Smaw cannot rely on temporal proximity to show that his complaints and termination were causally connected. The court finds that Smaw's termination to be too temporally remote from the protected activity to satisfy the causality factor. "[W]here a substantial period of time has elapsed between the two events-- engagement in the protected activity and the adverse employment action--the causal connection is less likely to exist absent evidence demonstrating a connection between the two events." *See Breech v. Alabama Power Co.*, 962 F.Supp. 1447, 1461 (S.D.Ala.1997), *aff'd,* 140 F.3d 1043 (11th Cir.),

*cert. denied,* 525 U.S. 846, 119 S.Ct. 117, 142 L.Ed.2d 94 (1998). *Malone v. K-Mart Corp.* 51 F.Supp.2d 1287, 1308 (M.D.Ala.,1999)(citing cases for the proposition that a three to four month gap is insufficient to establish a causal connection). Smaw's March 2002 termination took place three months after his December 6, 2001 complaint and eleven months after his April 9, 2001 complaint.

Assuming *arguendo* that Smaw can establish a prima facie case, he cannot rebut defendants legitimate, non-discriminatory reason for his termination. This has already been discussed in relation to the racial discharge claim. Defendants initial response to the Smaw-Hall altercation was to lay off both Smaw and Hall. At that time Smaw had already made his two complaints of discrimination. When the two returned to work Hall visited Sims and Martin to discuss the altercation, show them his medical and police reports and to express concern for his safety. EBSCO contends and the court agrees that it does not make sense that defendants, as part of master plan to retaliate against Smaw, laid off two employees as a pretext for terminating Smaw a few weeks later. Defendants are entitled to summary judgment on Smaw's retaliation claim.

**Conclusion**

By separate order, the court will grant EBSCO's motion for summary judgment.

DONE this 15th day of July, 2003.

[signature]

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT